**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| RENE ANTONIO B.O.[1], <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil No. 22-1156 (GLS) |

## OPINION AND ORDER

Plaintiff seeks review of the Commissioner of the Social Security Administration's denial of his application for disability insurance benefits. Docket No. 1. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 12. The Commissioner opposed. Docket No. 13. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c). Docket No. 3. After careful consideration of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **REVERSED** and the case is remanded for further administrative proceedings consistent with the Court's opinion.

### I.       Procedural Background

Plaintiff served in the United States Army for 29 years and retired as a Sergeant Major. Tr. 85.[2] Plaintiff subsequently worked as a security systems administrator with Amgen Manufacturing Limited, and his last date of employment was August 16, 2019. Tr. 86, 703-04. Plaintiff filed an application for disability insurance benefits claiming that, as of August 16, 2019, the following conditions limited his ability to work: depression, anxiety, post-traumatic stress disorder, back problems, knee problems, sleep apnea, hearing problems, traumatic brain injury, and respiratory problems. Tr. 461-62. The application was denied initially and upon reconsideration. Tr. 491-502.

---

[1]   Plaintiff's last name is omitted for privacy reasons.
[2]   "Tr." refers to the transcript of the record of proceedings.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on October 23, 2020, a hearing was held via telephone before ALJ Angel Viera. Tr. 75-91. Plaintiff testified and was represented by counsel. Id. Vocational Expert Linda Woodham testified at the hearing, as well as medical expert Dr. Rosamarie Peña Castro. Id. A supplementary hearing was held via telephone on September 14, 2021, because the ALJ wanted to hear testimony from a specialist in internal medicine. Tr. 39-40. Medical expert Dr. Jorge Hernández-Denton and Vocational Expert Luisa Suez testified at that hearing. Id.

The ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of August 16, 2019, through the date of the decision on November 26, 2021. Tr. 21-31. The last date insured is December 31, 2024. Tr. 22. Plaintiff asked the Appeals Council to review the final decision issued by the ALJ, but the request was denied on January 31, 2022 (Tr. 1-5), rendering the Commissioner's decision the final decision for review by this Court. On March 31, 2022, Plaintiff initiated this action and both parties filed memoranda in support of their respective positions. Docket Nos. 1, 12, 13.

## II.     Legal Framework

### A.     Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit claimant's physical or mental ability to do

basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

**B.    Standard of Review**

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence

standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence. Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Secretary, 819 F.2d 1, 3 (1st Cir.1987).

### III.   Discussion

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 16, 2019, the alleged onset of disability. Tr. 23. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): degenerative disc disease, obesity, post-traumatic stress disorder, and major depressive disorder. Tr. 23. The ALJ further found that Plaintiff had a series of impairments that were not severe because these did not cause, individually or in combination with other impairments, more than minimal work-related difficulties for a continuous period of at least 12 months. Tr. 23-24. These non-severe impairments were Plaintiff's finger contracture, obstructive sleep apnea, hearing loss, onychomycosis, elbow epicondylitis, tinnitus, sinusitis, and rhinitis. Tr. 24, 995, 1005, 1015. The non-severe impairments were evaluated in combination with Plaintiff's severe impairments in determining his RFC. Tr. 24.

The ALJ analyzed Plaintiff's mental impairments—focusing on Plaintiff's ability to understand, remember, apply information, or interact with others—and concluded that Plaintiff's mental impairments were non-severe. Tr. 25. See 20 C.F.R. §404.1520a(b)(2); §404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.00. In the first area of functioning, the ALJ found that Plaintiff had moderate limitations because of difficulty remembering, following instructions, completing tasks, managing funds, taking medications without reminders, and driving. Tr. 25, 737-744, 987, 1268. In the second functional area, the ALJ noted that Plaintiff had moderate limitations because Plaintiff reported having difficulty engaging in social activities, spending time in crowds,

4

and getting along with others. Tr. 25, 737-744, 987, 1133. In the third area of functioning, the ALJ concluded that Plaintiff had moderate limitations because Plaintiff reported difficulty concentrating, watching television, following instructions, and completing tasks. Tr. 25, 736-744, 987, 1268. Regarding the fourth area of functioning, the ALJ also found that Plaintiff had a moderate limitation in his ability to adapt or manage himself because Plaintiff reported needing reminders to bathe and groom, and difficulties managing his mood and dealing with changes in routine. Tr. 25, 987, 1081-1083, 1092.

At the conclusion of the step two analysis, the ALJ stated that the paragraph B analysis was applied in steps three and four:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis. Tr. 25-26.

Therefore, the ALJ incorporated the paragraph B criteria in the RFC determination's step four. The ALJ concluded that Plaintiff did not meet the criteria for a mental impairment under paragraph C because the evidence sustains a finding that Plaintiff can adjust and adapt to changes in his environment and daily life. Tr. 26.

At the third step of the analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1, and proceeded to determine Plaintiff's RFC. Tr. 25-26. After considering the entire record and all of Plaintiff's symptoms, the ALJ concluded that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. §404.1567(b), except that he:

> can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, sit for 6 hours, stand for 6 hours, and walk for 6 hours. He can climb ramps and stairs frequently, never climb ladders, ropes, or scaffolds, frequently balance, stoop, kneel, crouch, and crawl. He can never work at unprotected heights, and frequently with moving mechanical parts and operating a motor vehicle. In addition, [Plaintiff] can perform simple, routine tasks, use judgment to make simple work-related decisions, deal with changes in a simple work setting, interact frequently with supervisors and coworkers, and interact occasionally with the public. Tr. 26.

In formulating the RFC, the ALJ considered Plaintiff's symptoms and the extent to which these were reasonably consistent with the objective medical evidence and other evidence on record, including medical opinions, studies, medications prescribed, and prior administrative medical findings, as required by 20 CFR §404.1529; §404.1520C and SSR 16-3P, 2017 WL 5180304 (S.S.A.). Tr. 26.

At step four, the ALJ noted that Plaintiff was unable to perform his past relevant work as a security systems administrator. Tr. 30-31. Therefore, the ALJ proceeded to step five and concluded that Plaintiff was able to perform jobs that existed in significant numbers in the national economy including small-parts assembler, price marker, and laundry folder. Tr. 32.

Plaintiff argues that the ALJ erred at step two by completely ignoring Plaintiff's allegations of migraine headaches, failing to categorize two of Plaintiff's impairments (i.e., elbow pain and hand impairment) as severe, failing to consider the effects of medication when establishing the RFC, and failing to develop the medical record on the effects of Plaintiff's medication. Docket No. 12.

A.      Elbow Pain

Plaintiff argues that the ALJ erred at step two of the sequential process by failing to categorize Plaintiff's elbow epicondylitis and hand pain as severe thus formulating an incomplete RFC. Docket No. 12 at 15-16. Plaintiff further argues that the ALJ erroneously concluded that there is no evidence of ongoing treatment for Plaintiff's elbow pain. Docket No. 12 at 15.

Under the Social Security Act's 12-month durational requirement, limitations which do not restrict a plaintiff's ability to function in substantial gainful activity over a period of at least 12 months are immaterial to the RFC determination. 42 U.S.C. § 423(1)(A). The ALJ issued his decision on November 26, 2021 (Tr. 32), and there is no evidence of ongoing elbow treatment during the 12 months prior to the ALJ's decision. Nonetheless, the ALJ did consider Plaintiff's elbow pain. Tr. 28. The ALJ considered a consultative examination performed by rheumatologist Dr. Carlos Pantojas on October 29, 2019. Tr. 28, 991. Plaintiff reported constant body pain. Tr. 991. However, no limitation of movement in the upper extremities was found. Tr. 28, 993, 996-997. The ALJ also considered the functional limitations reported by Dr. Pantojas and his opinion that Plaintiff could have problems lifting and carrying moderate to heavy objects. Tr. 28, 993. On January 23, 2020, Dr. Daniel G. Colón-Conde noted that Plaintiff's physical exam was suggestive of right lateral epicondylitis. Tr. 1080. Dr. Colón-Conde stated that Plaintiff's prognosis was

"fair." Tr. 1081. The ALJ noted that, during the physical medicine and rehabilitation evaluation, Plaintiff exhibited full strength, no limitation of movement, and intact sensation in the upper extremities. Tr. 28, 1080. In March 2020, Plaintiff was seen by Dr. Anelys Torres-Rivera, who reported that Plaintiff had received a steroid injection in his right elbow, that Plaintiff had some pain, and recommended conservative measures such as continuation of treatment. Tr. 1051. The ALJ also noted that Plaintiff had a telephone follow-up on February 1, 2021. And an inquiry of symptoms was conducted which resulted in a negative review. Plaintiff was found stable and recommended follow-up appointments in four months. Tr. 28, 1299-1303. The ALJ further noted that Plaintiff received therapeutic exercises and ultrasound therapy for his lateral epicondylitis of the right elbow various times in February and March of 2020. Tr. 1005-1007. In February 2020, Plaintiff received occupational therapy with Carmen M. Rivera-Echevarria, consisting of stretching and muscle strengthening. Tr. 191-197.

After considering the foregoing medical evidence, the ALJ found Dr. Hernández-Denton, an impartial medical expert who evaluated Plaintiff and testified at the hearing, very persuasive. Tr. 30. Dr. Hernández-Denton testified that Plaintiff had practically no limitations. Tr. 43. The ALJ concluded that Plaintiff's elbow pain was non-severe, and that there was no evidence of ongoing treatment other than prescribed medications and periodic routine examinations. Tr. 24. The ALJ incorporated the recommendations of Vocational Expert Luisa Suez that Plaintiff could never climb ladders, ropes or scaffolds in the RFC. Tr. 44. The Court finds no error.

### B.    Hand Impairment

Plaintiff argues that the ALJ erred in failing to classify his right-hand pinky impairment as severe, ignoring medical treatment and limitations. Docket No. 12 at 16. The ALJ considered the medical record and noted that Plaintiff had contractures and deformity in the fifth finger of his right hand but retained full strength and bilateral functionality. Tr. 24, 995. On October 29, 2019, Plaintiff was examined by the rheumatologist, who reported flexion contracture and decreased range of motion in the fifth finger of the right hand. Tr. 993. Dr. Pantojas reported that Plaintiff had problems lifting and carrying moderate to heavy objects but no problems handling objects. Tr. 993. Dr. Pantojas also reported that Plaintiff's strength was five out of five in both hands. Tr. 995. The medical expert, Dr. Hernández-Denton, evaluated Plaintiff's record and testified that Plaintiff's hand impairment was limited to the pinky finger. Tr. 41. He opined that such a limitation did not impede Plaintiff from completing tasks with his hands. Tr. 41. The ALJ found Dr.

Hernández-Denton's opinion highly persuasive. Tr. 30. The evidence in the record thus sustains the ALJ's conclusion that Plaintiff's hand impairment did not substantially affect his ability to perform work-related activities and was non-severe. Tr. 24.

C.    **Medications**

Plaintiff argues that the ALJ erred by failing to consider the medical records from the Veterans Affairs Department ("VA") regarding the effects of medication when establishing Plaintiff's RFC. Docket No. 12 at 18. Plaintiff argues that the evidence established that Plaintiff would have to spend at least 15 minutes each hour to administer medication and that under those conditions there would be no jobs available for him. Id. Plaintiff cites to the supplemental hearing held on September 14, 2021. Docket No. 12 at 17. During the hearing, Plaintiff's attorney asked the Vocational Expert Luisa Suez: "Doctor, taking into consideration that this person takes around six medications a day to avoid pain and other psychiatric medications, could we establish—the evidence establishes that at least 15 minutes of each hour would have to be dedicated to reorienting this claimant, I mean, that he would be off-task receiving instructions, how would that affect for the work examples you offered?" Tr. 45-46. The Vocational Expert responded that there would be no jobs available. Tr. 46. Plaintiff also points to a function report dated May 4, 2020, in which Plaintiff reported taking Bupropion 150 mg, which caused him headaches, Zolpidem 5 mg, which caused him dizziness, and Hydroxyzine 25 mg, Tramadol 50 mg, and Naproxen 500 mg. Docket No. 12 at 18; Tr. 135. However, the record does not sustain the premise used by counsel during the hearing—that Plaintiff would have to take medication every 15 minutes—or that the side effects of the medication were incapacitating. Treatment records from September 6, 2019, established that Plaintiff was prescribed Zolpidem to be taken once a day at bedtime. Tr. 807. Treatment records from September 13, 2019, established that Plaintiff was prescribed Hydroxizine once a day as needed. Tr. 805. On January 10, 2020, Plaintiff was prescribed Bupropion, one tablet a day. Tr. 1095. The Vocational Expert's answer to the hypothetical assumption posed by counsel during the supplemental hearing does not constitute medical evidence which would have to be considered by the ALJ. See 20 C.F.R. § 404.1513.

Plaintiff has also failed to establish that the ALJ did not consider the effect of his medications in determining his RFC or that his medications resulted in more severe restrictions than accounted for in the RFC. Social Security regulations establish the criteria for the ALJ to evaluate the effects of medications on a plaintiff. These include:

> (i)     [D]aily activities;
> (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii)   Precipitating and aggravating factors;
> (iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.
>
> 20 C.F.R. § 404.1529(c)(3)i-vii.

The ALJ acknowledged that Plaintiff was taking prescribed medications and that his impairments were improving or stabilizing with medication. Tr. 24, 1093. The ALJ further noted that Plaintiff was recommended continued use of pain medications. Tr. 28, 1093. And that, on October 29, 2019, Plaintiff visited Dr. Pantojas and reported almost constant body and neck pain not relieved by pain medication. Tr. 28, 991. However, the ALJ noted that the rest of the examination revealed full range of movement and no sensory, motor or reflex abnormalities. Tr. 28, 993, 996-997. The ALJ also noted that Plaintiff could perform light house chores and yard work, prepare simple meals, go to medical appointments, shop with his wife, drive short distances, and read books. Tr. 25, 736-744, 987, 1268.

The ALJ further noted that Plaintiff was receiving outpatient medication for his mental impairments. Tr. 26. The ALJ considered the medical record from the VA and noted that on August 16, 2019, Plaintiff was prescribed anxiety medication. Tr. 28, 815. The ALJ concluded that Plaintiff's symptoms were not disabling and did not prevent Plaintiff from performing unskilled, light work. Tr. 30. The Court finds no error. See Padilla-Gómez v. Comm'r of Soc. Sec., 88 F.Supp.3d 14, 22 (D.P.R. 2015) (ALJ did not err when she considered plaintiff's symptoms but did not find them disabling to preclude plaintiff from performing light, unskilled work); Pérez v. Sec'y of Health & Human Servs., 958 F.2d 445, 448 (1st Cir. 1991) (ALJ not required to accept allegations of side effects when the record does not sustain that these are significantly limiting); Ho v. Saul, 2021 WL 1828259, at *8 (D. Haw. May 7, 2021) (quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (holding that the ALJ properly excluded side effects from consideration when the record contained only "passing mentions of the side effects" and no

evidence of side effects severe enough to interfere with the claimant's ability to work)); Meléndez Cruz v. Saul, 2020 WL 1951733, at *6 (D.P.R. Apr. 22) (not totally disabling when plaintiff has infrequent treatments and only moderate symptoms).

Plaintiff further argues that the ALJ erred by failing to ask psychologist Dr. Peña Castro about the effects of medications at the first hearing, and again by failing to ask the medical expert Dr. Hernández-Denton about the effects of Plaintiff's medications during the supplemental hearing. Docket No. 12 at 18. During the supplemental hearing on September 14, 2021, counsel for Plaintiff was asked by the ALJ if he had any questions for Dr. Hernández-Denton, to which he replied he had none. Tr. 43. It was Plaintiff's burden to question the medical experts if he believed that clarification was needed regarding the effects of medication on Plaintiff's work activities. Plaintiff bears the burden "[…] to probe the basis for the medical advisor's conclusion at the time of his testimony". Torres v. Sec'y of Health & Hum. Servs., 870 F.2d 742, 745 (1st Cir. 1989). No error can be attributed to the ALJ. See id. ("We are not favorably disposed towards one who remains silent when he had the opportunity (and the burden) to inquire and then faults the medical advisor for failure to explain his testimony.").

In any event, the ALJ's conclusions are based on substantial evidence. Plaintiff was taking various medications long before he stopped working. Tr. 908-39, 945, 949, 957, 963-64, 968, 975. Furthermore, the medical evidence established that the Plaintiff generally denied adverse side effects and reported being satisfied and stable on his medications. Tr. 1046-47, 1084-85, 1089, 1247, 1305-12. The ALJ properly concluded that Plaintiff's impairments were controlled with medication. Tr. 24. Olmeda v. Astrue, 16 F.Supp.3d 23, 31 (D.P.R. 2014).

### D.   Headaches

Plaintiff alleges, that the ALJ erred at step two of the sequential process by failing to address Plaintiff's allegations of migraine headaches and by formulating an incomplete RFC. Docket No. 12 at 14-15. At step two of the sequential analysis, the ALJ concluded that Plaintiff's post-traumatic stress disorder and major depressive disorder were severe pursuant to 20 CFR 404.1520(c) and SSR 85-28. Tr. 23-24. But did not take into consideration (or even mention) Plaintiff's allegations of headaches. The ALJ did not categorize Plaintiff's headaches as an impairment. The Commissioner argues that the ALJ's RFC determination regarding Plaintiff's mental impairments was based on substantial evidence because these did not significantly limit his basic work activities. Docket No. 13 at 13. The Commissioner cites to various parts of the record

including state agency psychological consultants Dr. Luis Umpierre and Dr. Sydnia Rosado, who assessed Plaintiff and found that his mental conditions would not significantly limit basic work activities. Id. However, neither Dr. Umpierre nor Dr. Rosado addressed Plaintiff's headaches. See Tr. 30, 469-70, 483-85. The Commissioner further argues that Plaintiff's allegation of headaches is a new argument not brought forth during the administrative proceedings and that there is no evidence of greater functional restrictions. Docket No. 13 at 14. But the record reveals that Plaintiff complained of headaches and has a long history of headaches dating back to the year 2012. In fact, the Commissioner acknowledged this by arguing that Plaintiff had a VA classification consisting of a 30% disability rating for headaches dating to 2012. Docket No. 13 at 14. The record also contains evidence of reported headaches from 2017 through 2021.[3]

On May 12, 2017, the VA reported that Plaintiff had headaches of unknown etiology which were 30% disabling. Tr. 662. The VA also noted that the headaches consisted of characteristic prostrating attacks occurring on an average of once a month over the last several months. Tr. 666. The VA reported a 30% disability due to headaches on June 5, 2012, and again on March 3, 2017. Tr. 666. On June 17, 2019, the Plaintiff underwent a C&P evaluation at the VA, and Plaintiff reported oppressive stabbing pulsatile pain on the frontal area. He reported having headaches daily with a usual duration of two hours as well as sensitivity to light. Tr. 904-905. Plaintiff also reported that the headache condition impacted his ability to work. Tr. 152. On that same date, Plaintiff reported taking Advil, Aleve and Panadol PM to treat the migraine headaches. Tr. 817. The VA maintained the 30% disability rating for migraine headaches. Tr. 851-842. The medical record also reflects that, on September 26, 2019, Plaintiff had psychosocial stressors including traumatic experience, medical problems, and chronic pain. Tr. 1131. The record also listed "aching headache" as a problem. Tr. 1131. Plaintiff was evaluated on October 24, 2019, by Dr. Edelmiro Rodríguez Ramírez and Plaintiff reported headaches. Tr. 986. On October 29, 2019, Plaintiff was evaluated by rheumatologist, Dr. Carlos Pantojas, and Plaintiff reported frequent headaches

---

[3] A substantial amount of the medical record relating to headaches predates Plaintiff's established onset date of disability of August 16, 2019. Nonetheless, the ALJ is required to consider medical evidence at least 12 months before the Plaintiff filed his application for benefits. See 20 C.F.R. § 416.912 "[…] we will develop your complete medical history for at least the 12 months preceding the month in which you filed your application […];" 20 C.F.R. § 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). Plaintiff filed his application for social security benefits on September 11, 2019. Tr. 679. Evidence of headaches after September 11, 2018, are part of the medical evidence in this case.

associated with dizziness and nausea. Tr. 991. Plaintiff reported headaches or loss of consciousness. Tr. 992. The VA progress notes from May 28, 2021, reported a 30% disability related to migraine headaches. Tr. 1253. The VA progress notes dated June 9, 2021, reported a 30% disability for migraine headaches. Tr. 1235.

Given that Plaintiff filed for benefits in 2019, after the regulations were amended, the Commissioner argues that pursuant to 20 C.F.R. § 404.1520(b)(c), the ALJ did not have to consider disability ratings by other agencies or entities as these are "neither valuable nor persuasive to the issue of whether [a claimant] is disabled". 20 C.F.R. § 404.1520(b)(c)(1). However, even though the ALJ was not required to provide persuasive and valid reasons for discrediting the VA disability rating regarding Plaintiff's headaches, the ALJ did have to "consider all of the supporting evidence underlying" the VA's disability rating. 20 C.F.R. § 404.1504. See Rascoe v. Kijakazi, 2022 WL 15524445, at *6 (E.D.N.C. Mar. 31, 2022) (remanding because the ALJ did not acknowledge a VA disability rating and failed to consider the evidence underlying the VA disability determination); Mooney v. Comm'r of Soc. Sec., 2023 WL 4034152, at *8 (N.D. Ohio May 31, 2023) (the ALJ was required to consider the evidence underlying the VA's disability determination); c.f. Shoen v. Comm'r of Soc. Sec., 2022 WL 3152233, at *4 (W.D.Mich. Aug. 8, 2022) (the ALJ appropriately considered all evidence underlying the VA's determination).

The ALJ was required to consider the evidence of Plaintiff's headaches and to make a determination as to the severity of the impairment. The ALJ did not do so. The ALJ's error at step two was not harmless because it could not be remedied by continuing the sequential analysis. Plaintiff's headaches were not considered in the RFC determination made by the ALJ. A remand on this issue is warranted. See Cooley v. Saul, 2020 WL 5406044, at *4 (D.N.H. Sep. 9, 2020) (reversible error when ALJ fails to consider non-severe impairments in the RFC); Spicer v. Barnhart, 64 Fed. Appx. 173, 177 (10th Cir. 2003) (remanding case because the ALJ did not mention plaintiff's impairment which called into question whether ALJ formed conclusion regarding the impairment); Veney v. Astrue, 2009 WL 918474, at *3 (E.D. Okla. Mar. 31, 2009) (remanding because ALJ made no mention of the claimant's headaches (or any of the evidence documenting them) in discussing the impairments).

**IV.     Conclusion**

For the reasons stated above, the Commissioner's decision is **REVERSED,** and the case is remanded for consideration of medical evidence pertaining to Plaintiff's headaches and further administrative action consistent with this opinion.


**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 11th day of September 2023.


<u>s/Giselle López-Soler</u>
GISELLE LÓPEZ-SOLER
United States Magistrate Judge

13